IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TAMMY J. BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 11-04032-CV-S-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

**ORDER**

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, and defendant's reply brief in support of the administrative decision. For the reasons stated herein, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). The Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). However, re-weighing the

evidence is not permitted.  Flynn v. Chater, 107 F.3d 617, 620 (8th Cir. 1997).  Therefore, even if plaintiff's impairments support a claim for benefits, the Court must affirm if there is substantial evidence to support the ALJ's conclusion to the contrary.  See id.  This Court cannot reverse the Commissioner's decision "merely because substantial evidence exists in the record that would have supported a contrary outcome."  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Discussion

Plaintiff was 36 years old on her alleged disability onset date, August 14, 2007. She alleges disability due to degenerative disc disease, chronic back pain, inability to stand or sit for long periods of time, inability to bend, burning/stinging feelings in her back and legs, and carpel tunnel syndrome. She has a tenth grade education.

The ALJ found that plaintiff had not engaged in substantial gainful activity since August 14, 2007, the alleged onset date. It was his finding that plaintiff had the following severe impairments: "status post lumbar fusion; degenerative disc disease; depression; and, anxiety disorder (20 CFR 416.920 ( c)." [Tr. 13]. He found that her allegations of carpal tunnel syndrome were not supported by the record and that it was not a severe impairment. The ALJ concluded that she did not have an impairment or combination of impairments that met or equaled a listed impairment. He found that she had the Residual Functional Capacity ["RFC"] to perform sedentary work, with certain exertional and non-exertional limitations, including only being able to understand and remember very short and simple instructions, and able to carry out simple, routine tasks. He also found that she was able to sustain concentration necessary for unskilled work. He concluded that plaintiff's allegations that she is totally disabled were inconsistent with the record as a whole, and that she was not fully credible. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

At the hearing before the ALJ, plaintiff testified that she lives with her three children. It was established that plaintiff's main complaints were severe back pain, and arm and wrist problems. Plaintiff testified that she was unable to work because of carpel tunnel problems and not being able to bend and lift. She can't pick up things because of carpel tunnel. She thought she could lift five to ten pounds. Plaintiff testified that she could hold smaller objects like small cans, but that she has trouble on a daily basis with things like cooking because she can't hold her

arms up very long. This also causes problems with fixing her hair. She has problems lifting her arms overhead and straight out in front of her. Plaintiff also stated that she had problems standing for a long period of time, like when she is doing the dishes. She has to take a five to ten minute break before she can finish the dishes. She thought she could stand about 20 to 25 minutes, and then her legs get very weak and she has a pinching feeling in her low back. She could probably sit about the same amount of time before she has increased pain in the back of her legs. Her legs will start to go numb. It was her testimony that she has problems with her whole back. Her lower back was worse, but now her upper back and neck bother her as well. She has stinging, burning, throbbing pain in her back if she is carrying something or bending down. Plaintiff testified that she also has problems with her knees, but her back is her main problem and sometimes her legs will "want to give out on [her]." [Tr. 31]. In terms of how she treats her back problem, she testified that she alternates between using a heating pad or Icy Hot. She has medications and exercises she is supposed to do every day. If she pushes herself too much, she will have to lie down for 15 to 20 minutes. Plaintiff testified that she has neck pain, especially if she does a lot with her hands or arms. She will get burning and stinging in her upper shoulders, and pain in her neck if she is doing something like fixing her hair. She also has constant neck pain, which causes tightness and stinging, and has problems turning her head and keeping it straight. Sometimes her neck will slip and everything goes black. This happens once or twice a month. Plaintiff testified that her doctor wanted her to go a back specialist, but she can't afford it. She had back surgery because of ruptured discs, but the surgery was never completed because she lost her Medicaid. It was plaintiff's testimony that her energy level was pretty good, and she can get done most of what she wants to during the day. She then stated that she can get up and do laundry and dishes, but she can't do all the cleaning she wants to do in one day because she loses her energy after doing a

few things.  Then she has to rest for an hour or so.  She rests before her children get home so that she will have enough energy to deal with the rest of night of cooking and taking care of her children.  On a bad day, she is in more pain, and she can't do as much as she wants.  This happens two or three times a week.

According to the testimony of a vocational expert, plaintiff did not have any past relevant work.  He recommended that unskilled sedentary work would be available to plaintiff.  Representative jobs would include medical packaging sealer, and credit circuit board assembly.  If additional limitations were imposed because of chronic and severe pain and the need to rest frequently, she would be unable to work.

Plaintiff contends that the ALJ erred in failing to give substantial weight to the opinion of a treating physician, Dr. Andrew Quint.

A review of the record in this case indicates that the ALJ noted that plaintiff had a "longstanding history of low back pain." [Tr. 15].  The medical records demonstrate that after conservative treatment that did not provide relief, she underwent spinal surgery in January of 2005, which involved a fasciectomy and pedicle screw fixation.  The medical records indicate that she improved after surgery and that the hardware remained in good position.  After reporting 90% improvement, she advised her family medicine physician that she was having more pain, but the doctor did not want to prescribe narcotics, as there had been some issues of possible drug-seeking behavior in the past.  The doctor also noticed some exaggeration of symptoms.

In April of 2006, plaintiff resumed care with her primary care physician, Dr. Andrew Quint.  In addition to providing maintenance medications for plaintiff, the doctor also instructed her on stretching and back exercises.  Dr. Quint diagnosed plaintiff with failed back syndrome and chronic low back pain post lumbar fusion and diskectomy, with a history of degenerative disc

disease. He also advised her to stop smoking to improve her health and ongoing back pain. The record indicates that plaintiff had not been compliant with the exercising and smoking cessation.

Dr. Quint wrote a letter dated November 5, 2009, in which he summarized the medical care he had afforded plaintiff since April 3, 2006. The record indicates that in April of 2006, he restricted her to light duty, noting that she was performing janitorial work at the time. In May of that year, he recommended that she find work without a lot of standing, heavy lifting, or frequent bending or squatting. After seeing plaintiff sporadically, the doctor opined that she could not perform manual labor and that she did not have the education to perform other types of work. He stated that "[b]ecause of her limited education and vocational training, she is indeed unable to maintain full-time gainful employment in a job for which she has suitable training and experience." [Tr. 364]. He also recommended vocational training. The ALJ found that "[t]his strongly suggests the claimant is able to perform a wide range of sedentary work as described in the [RFC]." [Tr. 19].

Plaintiff contends that Dr. Quint diagnosed her with chronic back pain with failed low back surgery syndrome with symptoms of radiculopathy on the left side, and found that she was unable to work because of her back pain. She contends that this opinion should have been given controlling weight, and that the ALJ did not give valid reasons for not accepting the opinion of the treating physician that plaintiff is unable to work.

In terms of the weight the ALJ gave to the opinion of Dr. Quint, the medical evidence establishes and the ALJ recognized that plaintiff had a long history of low back pain. The record indicates that after she had back surgery in January of 2005, the neurosurgeon noted in the follow-up that she had no evidence of neurologic deficits, was ambulating well, and could toe and heel walk without difficulty. Subsequent x-rays confirmed that the hardware remained in good

position. Plaintiff's family medicine physician also found that she was able to heel and toe walk without difficulty, had no neurological deficits, had full motor strength, and normal reflexes. Plaintiff saw Dr. Quint in April of 2006; he noted that she complained of low back pain and that she was working as a janitor. She was taking Ibuprofen, but she didn't get much pain relief. He assessed her with chronic low back pain with failed back syndrome. Dr. Quint indicated that he began her on Amitriptyline to help with sleep and for low back pain. He indicated that he restricted her to light duty at that time. In May, Dr. Quint saw plaintiff again, and she indicated that not working had improved her back pain. She continued to complain of pain with increased standing, bending, lifting, and he recommended that she avoid employment that "required a lot of standing, heavy lifting, or frequent bending or squatting." [Tr. 362]. Fifteen months later, plaintiff saw Dr. Quint again, at which time she stated that her back pain was unchanged and she could not work. He continued to diagnosis her with chronic low back pain with failed low back surgery syndrome. He believed an MRI scan and neurosurgical or orthopedic consultation would be helpful, but that she could not afford these without Medicaid or other insurance. In March of 2008, plaintiff saw the doctor again with the same complaints. He noted tenderness in the lumbar spine and sacral area, normal deep tendon reflexes of the knees and ankles, and normal strength in the right lower extremity. She had some possible weakness of the left quadriceps muscle, but normal flexion and extension of the ankle; straight leg raising was negative bilaterally. Dr. Quint continued the Amitriptyline and Ibuprofen, and added Tramadol for additional pain relief. In November of 2008, plaintiff returned to Dr. Quint with continued complaints. As on past occasions, he advised her to do back exercises and stretches. Plaintiff complained that these made her back tighter, but the doctor told her that these were about the only way to help her back. He also added Baclofen, a muscle relaxer, to her medical regimen. While he did not think she was

able to perform manual labor and noted that she did not appear to have the education to perform any other types of work, he recommended that she would benefit from vocational rehabilitation. The doctor indicated that he saw plaintiff on February 4, 2009, the last visit before his letter of November of 2009. She was there for a well-woman exam, and "[h]er back pain was only peripherally addressed at that visit." [Tr. 364]. He believed that there were no changes in her condition and stated that, through telephone calls since then, she had not improved. He offered his opinion that due "to her limited education and vocational training, she is indeed unable to perform full-time gainful employment in a job for which she has suitable training and experience." [Id.].

A review of the record indicates that the ALJ found that the objective medical evidence did not support the level of pain to which plaintiff testified at the hearing. It was the ALJ's opinion, however, that plaintiff had the RFC to perform a wide range of sedentary work. The ALJ found that plaintiff would be limited to occasionally stoop to bend forward at the waist; occasionally kneel to bend at the knees to come to rest on the knees; and occasionally crouch to bend downward by bending the legs and spine. It was also her finding that plaintiff was able to remember and understand very short and simple instructions; carry out simple, routine tasks; and sustain concentration for unskilled work. Based on the testimony of the vocational expert, the ALJ concluded that there were jobs plaintiff could perform. She also took into consideration plaintiff's credibility in assessing the RFC. The ALJ found that plaintiff's sporadic work history, which consisted of only three years of reported earnings, and low earnings, did not suggest a motivation to work. Additionally, she noted that were several references in the record to the fact that plaintiff exaggerated her symptoms. The ALJ also observed that plaintiff's daily activities were inconsistent with a total disability because she was able to care for herself, three children,

pets, do yard work, and perform most household tasks.

Turning to the weight given to the opinion of the treating physician, while a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The Court has, however, upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence,"Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).

Regarding the opinion of Dr. Quint, while plaintiff argues that the ALJ erred by improperly discounting the doctor's opinion that she could not work, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision. The record indicates that the ALJ carefully assessed the evidence of record, including the doctor's opinion, in concluding that she could perform a range of sedentary work. Although Dr. Quint offered the opinion that plaintiff did not have suitable training and experience to perform full-time employment, it is clear that vocational training would be outside a medical doctor's area of expertise. Additionally, the Eighth Circuit has recognized that the RFC finding is a determination

based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

A review of the record indicates that the ALJ relied on the record as a whole in rendering her RFC decision, including medical evidence from various sources, the opinion of a vocational expert, and plaintiff's testimony. It is apparent that she thoroughly reviewed the record, and that she took into account the opinion of Dr. Quint regarding plaintiff's inability to perform manual labor, including heavy, medium, or even light work. In this case, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC. It was her finding that she could perform unskilled sedentary work, with certain limitations. She properly considered all of the evidence of plaintiff's restrictions found to be credible in determining the RFC. The Court has carefully reviewed the record, and finds that there is substantial evidence in the record as a whole to support the ALJ's RFC finding. In this case, the Court finds that the ALJ relied on the record as a whole, including all the credible limitations to which plaintiff testified, in assessing her RFC. The Court cannot re-weigh the evidence, and if there is substantial evidence in the record as a whole to support the ALJ's decision, the Court must affirm that decision.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff did not suffer from a disabling impairment, and that she was not disabled under the Act. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
 JAMES C. ENGLAND
United States Magistrate Judge

Date:   7/19/12